UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

—————————————————————

FITNESS RESOURCE ASSOCIATES, INC.    )
                                     )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Civil Action
                                     )          No. 05-10003-RGS
AEROBICS AND FITNESS ASSOCIATION     )
OF AMERICA, INC.                     )
                                     )
            Defendant.               )
—————————————————————)

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT, AEROBICS AND
FITNESS ASSOCIATION OF AMERICA, INC. TO TRANSFER VENUE**

The defendant, Aerobics and Fitness Association of America, Inc. ("AFAA") submits the

following memorandum in support of its motion pursuant to 28 U.S.C. § 1404(a) to transfer venue

of this lawsuit from this Court to the United States District Court for the District of California

(Central Division).

**FACTUAL AND PROCEDURAL BACKGROUND**

1.      In its complaint, the plaintiff Fitness Resource Associates, Inc. ("FRA") has asserted

claims against AFAA arising from a dispute between the parties as to the manner in which they each

performed contractual obligations to provide training workshops for fitness instructors. (See

Complaint) (Exhibit 1).

2.      AFAA is a California corporation with a principal place of business in California.  Id.

3.      AFAA and FRA are separate entities that have performed their own individual fitness

programs and fitness-related services prior to, during, and after the life of their contract with one

another.  (See Affidavit of Linda Pfeffer, ¶¶ 2,7) (Exhibit 2).

L:\13345\000\Pld\04

4.      In 1990, the parties entered into the written contract, pursuant to which AFAA was

responsible for marketing, promoting and finding facilities to host personal fitness trainer

workshops, and FRA was responsible for providing course material and staff to teach the workshops.

Each entity earned a set percentage of the registration fees paid by fitness instructors who attended

(AFAA earned 60% and FRA earned 40% of the fees collected).  AFAA and FRA did not share the

profits or the losses from these workshops. (See Contract, ¶¶ IV-VI, IX) (Exhibit 1A).

5.      By the following terms of the contract, the parties expressly agreed that any disputes would

be resolved in accordance with California law:

> "This agreement is a California Contract.   It is the intention of the parties that this
> Agreement, including any suits or special proceedings hereunder (wherever commenced)
> shall be governed and interpreted by the laws of the State of California."

(See Contract, ¶ XIII) (Exhibit 1A).

6.      For a period in excess of twelve years, FRA and AFAA worked together under the 1990

contract without any objection or complaint by FRA, and FRA began to complain only in the

thirteenth year of the contract. (See Affidavit of Linda Pfeffer, ¶ 9) (Exhibit 2).

7.      During a period of approximately one year leading up to FRA's filing of the lawsuit in

December 2004, AFAA had on several occasions informed FRA that it had violated its contract with

AFAA by unilaterally canceling training workshops.  FRA alleged in response that AFAA had

committed certain wrongful acts, which AFAA denies.  In July 2004, AFAA terminated its contract

with FRA.  (See Termination Letter) (Exhibit 3).

8.      During the one year leading up to FRA's filing of this lawsuit, AFAA and FRA exchanged

through their counsel many letters and proposals for resolving their claims against one another, and

AFAA believed through FRA's actions that the claims would be resolved.  (See Affidavit of Linda

Pfeffer, ¶ 10) (Exhibit 2).

L:\13345\000\Pld\04

2

9.      The parties are now in active competition with one another.  (See Affidavit of Linda Pfeffer, ¶ 11) (Exhibit 2).

10.     In its complaint, FRA claims that AFAA breached its duties to FRA by intentionally scheduling the workshops in locations where enrollments were so low that AFAA and FRA would lose money.  FRA also claims that it is entitled to proceeds from an AFAA instruction book that was prepared separate from any program that AFAA and FRA put together, as well as an accounting of AFAA's books and records.  (See Complaint) (Exhibit 1).

11.     As to FRA's claims, and the anticipated response to those claims by AFAA, the majority of the documentary evidence and the witnesses with knowledge of the claims and response are located in California, where AFAA is located.  With regard to documents, there are estimated to be tens of thousands of documents relating to fitness workshops alone, and even more documents relating to the contractual relationship, publications, and any financial issues that may be relevant, all of which are located in California.  Additionally, the following individuals with knowledge of these issues, and who would be expected to testify as witnesses, are all located in California:

- Linda Pfeffer, AFAA President  – Knowledge concerning 1990 agreement and working relationship between AFAA and FRA.

- Phillip Longsworth, AFAA Vice President of Finance  – Knowledge concerning financial relationship between AFAA and FRA.

- Carol Mejia, AFAA Employee, Programming Dept. – Knowledge concerning host site locations, presenters and programs.

- Felix Rojas, AFAA Supervisor, Customer Service and Sales – Knowledge concerning customer complaints.

- Jennifer Ell, AFAA Employee, Host Site Department – Knowledge concerning host site locations.

- Claudia Gaer, AFAA employee, Host Site Department – Knowledge concerning host site locations.

- Megan Stern, AFAA Supervisor, Professional Affiliate Department – Knowledge concerning host site locations.

- Lisa Shapiro, AFAA Vice President, Business Development – Knowledge concerning 1990 agreement and working relationship between AFAA and FRA.

- Haruka Satoh, AFAA Employee, Accounting Department – Knowledge concerning workshops accounts.

- Rocky Fawcett, AFAA Vice President, Publishing – Knowledge concerning 1990 agreement, working relationship, and publishing/advertising of workshops.

- Chris Cuthrell, AFAA Former Vice President – Knowledge concerning operations, host site locations.

- Sue Pieroni, former Employee, Customer Service and Programming Department  - Knowledge concerning host site locations, customer service issues, complaints relating to workshops.

- Laura Carrington, AFAA Employee, Publishing Department – Knowledge concerning publishing/advertising of workshops, calendar of workshops, study guide.

- Tony Eid, AFAA Vice President of Accounting – Knowledge concerning financial relationship between AFAA and FRA.

- Lauri Reimer, AFAA Supervisor, Programming Department – Knowledge concerning host site locations, presenters, and operation of workshops.

- Kurt Murray, AFAA Supervisor, Continuing Education and Provider Department – Knowledge concerning working relationship, program content, cancellations of workshops, and presenters.

- Tracy Guirnela, AFAA Employee, Host Site Department – Knowledge concerning host site locations.

- Jacob Gray, AFAA Employee, Customer Service – Knowledge concerning customer complaints.

- Dennis Zabate, AFAA Employee, Computer Department – Knowledge concerning posting of host site locations.

- April Flores, AFAA Employee, TeleFitness Department – Knowledge concerning off-calendar workshops and host site locations.

- Lita Slaughter, AFAA Employee, Accounting Department – Knowledge concerning book sales.

(See Affidavit of Linda Pfeffer, ¶ 12)(Exhibit 2).

12.     AFAA and FRA are engaged in a lawsuit in California related to the enforceability of written non-compete agreements that FRA entered into with individuals who conducted workshops.  According to the complaint, at least one individual has expressed a desire to perform services for AFAA, but has been told by FRA that the non-compete agreement restricts the individual from doing so.  The lawsuit is entitled *Aerobics and Fitness Association of America, Inc. v. Fitness Resource Associates, Inc.*, *Los Angeles Superior Court, Central District, Civil Action No. BC326969.*

## ARGUMENT

**I.     TRANSFER OF VENUE IS JUSTIFIED BECAUSE MOST OF THE WITNESSES AND EVIDENCE ARE LOCATED IN CALIFORNIA, THE DISPUTE IS GOVERNED BY CALIFORNIA LAW, AND PLAINTIFF'S RACE TO THE COURTHOUSE TO SECURE ITS PREFERRED FORUM SHOULD BE GIVEN NO DEFERENCE.**

Although a plaintiff's choice of forum is normally given some deference, the circumstances involved in the dispute between these parties, including the location of the evidence and witnesses in California, the choice of California law that the parties agreed upon to resolve any disputes between them, and the discussions leading up to the plaintiff's "race to the courthouse" to secure its preferred forum, support a transfer of venue to California.

The Court is authorized to transfer venue from one district court to another in accordance with the following statute:

> "(a) For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  Because the lawsuit could have been brought in the District of California, where AFAA is located, a transfer in venue is statutorily authorized.  <u>See</u> 28 U.S.C. § 1391(a)(1)(providing that civil action may be brought in "judicial district where

any defendant resides, if all defendants reside in the same State").  Transfer to California

is also supported by the private interests and the public interests that the Court must

weigh in determining the most convenient forum.  See Atari v. United Parcel Svc., Inc.,

211 F. Supp. 2d 360, 362 (D. Mass. 2002) (court balances the private interests and the

public interests when considering transfer in venue).

> **A.**    **Private Interests Favor Litigating This Case in California.**

When considering a request to transfer venue, the Court considers the private interests in

such a transfer based upon the following factors:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the
> relative ease of access to sources of proof; (4) the availability of process to
> compel attendance of unwilling witnesses; (5) the cost of obtaining willing
> witnesses; and (6) any practical problems associated with trying the case most
> expeditiously and inexpensively.

Atari, 211 F. Supp. 2d at 362.

Litigation in California is more convenient to the parties and the witnesses.  Although the

plaintiff is located in Massachusetts, most of the witnesses with knowledge of the parties' claims

against one another are located in California.  In particular, AFAA has identified more than

twenty individuals with knowledge of (i) the contractual relationship between AFAA and FRA; (ii)

the fitness workshops that were scheduled, conducted or cancelled; (iii) the publications for which

FRA claims an interest; and (iv) the financial accounting issues that may be relevant to the claims.

All of these individuals with knowledge of these claims reside in California.  (See Affidavit of

Linda Pfeffer, ¶ 12)(Exhibit 2).  As to documentary evidence, there are estimated to be tens of

thousands of documents relating to the parties' respective claims, all of which are also located in

California. (See Affidavit of Linda Pfeffer, ¶ 12)(Exhibit 2).

In terms of convenience, the pre-trial discovery phase of this case would largely take place in California, where documents would be inspected and witnesses subject to deposition. If the case were litigated in California, counsel from California would be more likely to conduct this discovery, thereby avoiding the travel time and costs associated with Massachusetts counsel having to conduct the discovery. Additionally, it would be easier to enforce any discovery requests or orders from a court in California, where the discovery is to take place, than from Massachusetts. Having the trial in California would also be more convenient for the parties and the witnesses, who are readily accessible and will not have to cross the country to appear for trial in Massachusetts. Compelling the attendance of witnesses or the production of documents would also be considerably easier through the California judicial process, where those witnesses and documents are located. Therefore, the private interests support a transfer of venue from this Court to the District Court of California.

**B.      The Public Interests Also Weigh In Favor Of A Trial In California.**

In addition to the private interests, the Court also weighs the public interest when determining venue based upon the following factors:

> (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion.

Atari, 211 F. Supp. 2d at 362.

Here, the public interest weighs in favor of a transfer of venue from Massachusetts to California. First and foremost, California law must govern the action, by the terms of the 1990 agreement between the parties upon which plaintiff bases its claims. (See Contract, ¶ XIII) (Exhibit A). See Atari, 211 F. Supp. 2d at 363, citing Piper Aircraft Co. v. Reyno, 454 U.S. 235,

L:\13345\000\Pld\04

8

241 n.6 (1981) (case should be held in forum "that is at home with the state law that must govern the case.").

Additionally, there is no local interest in having the parties dispute litigated in Massachusetts, as the parties conducted workshops around the country with no particular attention paid to Massachusetts.  Conversely, the parties are involved in a lawsuit in California, where the issue to be decided under California law is whether FRA may prevent one or more California residents from performing services for AFAA under the terms of written non-compete agreements that FRA has entered with workshop presenters. *Aerobics and Fitness Association of America, Inc. v. Fitness Resource Associates, Inc., Los Angeles Superior Court, Central District, Civil Action No. BC326969.*  As to administrative difficulties of the courts, AFAA is not aware of any such difficulties in the United States District Court in California.

Therefore, the public interest weighs in favor of a transfer of this lawsuit from this Court to the District Court of California.

## C.      Plaintiff's Choice Of Forum Should Receive No Deference.

In addition to transferring venue for convenience, this Court has recognized special circumstances for transferring venue where, as here, plaintiff  "raced to the courthouse" in order to secure its preferred forum.  See, e.g., Davox Corp. v. Digital Systems International, 846 F. Supp. 144, 147-48 (D. Mass. 1993) (court transferred venue to District of Washington at defendant's request where plaintiff in response to defendant's invitation to negotiate filed preemptive lawsuit to secure Massachusetts as its preferred forum).

Here, the plaintiff should not receive the benefit of being the "first-to-file" the lawsuit in its preferred forum, after the parties negotiated their claims for over one year and defendant

L:\13345\000\Pld\04

9

reasonably believed that the claims would be resolved through these negotiations.  (See Affidavit of Linda Pfeffer, ¶ 10)(Exhibit 2).  In considering these factors leading up to the filing of the lawsuit in Massachusetts, in addition to the greater convenience in adjudicating the claims in California, the Court should therefore transfer venue from this Court to the District of California.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendant AFAA respectfully requests that this matter be transferred from this Court to the United States District Court for the District of California (Central Division).

AEROBICS AND FITNESS ASSOCIATION OF AMERICA, INC.

By its attorneys,


January 10, 2005                          /s/ Edward V. Colbert III_____
                                         Richard J. Grahn (BBO#206620)
                                         Edward V. Colbert III (BBO #566187)
                                         LOONEY & GROSSMAN LLP
                                         101 Arch Street
                                         Boston, MA  02110
                                         (617) 951-2800

L:\13345\000\Pld\04

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 10th day of January 2005 served a copy of the foregoing pleading upon all parties hereto by mailing copies thereof, via first class mail, postage prepaid, properly addressed to:

Gregg S. Blackburn, Esq.
Casner & Edwards LLP
303 Congress Street
Boston, MA 02210

_____/s/_____
Edward V. Colbert III

L:\13345\000\Pld\04

Ex. 1

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                    SUPERIOR COURT
                                                CIVIL ACTION NO.:

FITNESS RESOURCE ASSOCIATES, INC.        :
                                         :
        Plaintiff                        :
                                         :
v.                                       :
                                         :
AEROBICS AND FITNESS ASSOCIATION         :
OF AMERICA, INC.                         :
                                         :
        Defendant                        :

## COMPLAINT

Plaintiff Fitness Resource Associates, Inc. ("FRA") for its complaint against defendant Aerobics and Fitness Association of America, Inc. ("AFAA") alleges as follows:

### Nature of this Action

1.      This is an action seeking damage arising out of AFAA's breach of contractual and fiduciary duties and tortious conduct in connection with a joint venture between the parties.

### Parties

2.      FRA is a Massachusetts corporation having its principal place of business at 74 Crescent Road, Needham, Massachusetts. FRA is in the business of developing and operating programs for the teaching and training of personal trainers, yoga instructors, and other professionals in the physical fitness industry.

3.      AFAA is a California corporation having its principal place of business at 15250 Ventura Boulevard, Suite 310, Sherman Oaks, California. AFAA is in the

business of training and certifying aerobics and fitness instructors and publishing books
concerning fitness.

### Jurisdiction

4.     This court has jurisdiction over the Defendant pursuant to M.G.L. c. 223A
§ 3 inasmuch as AFAA transacts business in the Commonwealth, contracts to supply
services and things in the Commonwealth and regularly does and solicits business in the
Commonwealth.

### Factual Allegations

5.     Prior to the formation of the joint venture between FRA and AFAA
described below, FRA was already in the business of presenting courses in personal
training.  FRA had its own course outline, written materials, instructors whom it trained
and with whom it contracted, substantial goodwill, and a valuable reputation within the
fitness industry.

6.     Prior to the formation of the joint venture between FRA and AFAA
described below, AFAA was already in the business of certifying aerobics instructors.

7.     By Joint Venture Agreement dated October 30, 1990 (the "Agreement"),
FRA and AFAA entered into a joint venture for the purpose of engaging in the business
of providing training programs and certifying individuals in personal training.  A copy of
the Agreement is attached hereto as Exhibit "A."

8.     In reliance upon the promises made to it by AFAA in the Agreement and
upon the fiduciary obligations undertaken by AFAA pursuant thereto, FRA began to
conduct its personal training courses through the joint venture, contributing its course
outlines, its materials, most of its existing business and its reputation and goodwill.

9.    At the outset, the joint venture operated as contemplated by the Agreement. FRA selected locations for personal training workshops in major cities around the country. AFAA engaged facilities for the workshops pursuant to the Agreement. AFAA advertised these workshops, communicated with subscribers, collected enrollment fees and certified individuals who passed the exam, which was written by FRA. In accordance with the Agreement, FRA arranged for instructors, paid the compensation and travel expenses of those instructors, and presented the personal training programs it had developed and had been presenting since 1987. FRA then invoiced AFAA, and AFAA remitted to FRA 40% of the subscription amounts received.

10.    AFAA has since abused its position in the joint venture and has breached its contractual obligations to benefit itself and harm FRA.

11.    AFAA has disregarded the scheduling and facility requirements of the Agreement. Instead of scheduling workshops in consultation with FRA, AFAA has scheduled workshops unilaterally. Rather than arranging for facilities having the resources required by the Agreement, AFAA pursued a policy of avoiding the expense to itself of conference room rental by arranging for space in substandard facilities in remote locations. As a result, AFAA arranged for more and more workshops that were underenrolled on account of its choice of location and facility. The intended result of AFAA's practice has been to reduce the costs it incurs while reducing the profit per workshop to FRA, often causing it to lose money on a per-workshop basis.

12.    AFAA has further reduced its facility costs by unilaterally allowing student discounts and complementary enrollments in return for such discounts. As a result of this practice, AFAA has reduced the receipts in which FRA is entitled to share.

13.     As AFAA set about scheduling workshops in facilities and locations likely to be underenrolled, it at the same time unreasonably withheld its consent to cancel underenrolled workshops. In paragraph IX of the Agreement the parties anticipated the problem of under-enrollment and provided: "It is agreed that any course will be subject to cancellation if enrollment does not meet a minimum of fifteen people with the mutual consent of the parties." AFAA adopted a practice of unreasonably withholding its consent to cancellation of underenrolled courses, even to the extent of insisting that FRA incur the expense of travel and compensation for instructors for workshops having no paid enrollees, but only complementary enrollees. Thus, AFAA has insisted on its "right" for its own benefit to impose losses on FRA contrary to its fiduciary and contractual obligations under the Agreement.

14.     The Agreement provided that "All books and/or training workbooks or manuals developed for and during these courses shall be the joint property of both parties and any profits derived from their publication and sale, outside the courses, will be shared equally." AFAA has provided the Study Guide, prepared by FRA, to course subscribers for free upon their enrollment in workshops which is permissible under the Agreement. AFAA, however, has bundled FRA's Study Guide with other publications for sale and has given FRA none of the proceeds of such sales, contrary to the terms of the Agreement.

15.     AFAA also commissioned the preparation of a textbook during and for the program which is the subject of the joint venture. Although AFAA has required that enrollees in personal training workshops purchase the textbook, AFAA has refused to

permit FRA to be involved in the preparation of the book or to share in the proceeds of its sales, all contrary to the Agreement.

16. AFAA wrongfully repudiated and terminated the joint venture agreement.

17. AFAA commenced during the term of the Agreement a practice of consistently failing to pay invoices when due causing cash flow problems for FRA that resulted in out of pocket damages and lost income.

18. AFAA has failed and refused to pay FRA's invoices as required by the Agreement, and approximately $20,000 is currently overdue.

## Count One
### (Breach of Joint Venture Agreement)

19. FRA incorporates by reference as though set forth in full herein the allegations contained in paragraphs 1 though 18 of this Complaint.

20. AFAA has breached the Agreement by, inter alia, failing to comply with the scheduling and facility requirements of the Agreement, issuing complementary and discounted enrollments in lieu of facility rental, unreasonably withholding its consent to the cancellation of underenrolled courses, failing to account for all revenues received from operating programs, failing to account to and compensate FRA for sales of jointly owned publications, and withholding amounts due to FRA for workshops it has conducted and invoiced.

21. FRA has performed all obligations required of it as a condition of the Agreement.

22. As a result of AFAA's breaches of the Agreement FRA has been damaged in an amount known to AFAA but unknown to FRA exceeding $660,000.

## Count Two
### (Breach of Fiduciary Duty)

23.   FRA incorporates by reference as though set forth in full herein the allegations contained in paragraphs 1 though 22 of this Complaint.

24.   As a member of a joint venture AFAA is and was subject to fiduciary duties to the joint venture and to its joint venturer.  AFAA's breaches of the Agreement set forth above constitute breaches of its fiduciary duty to FRA, its joint venturer.

25.   As a result of AFAA's breaches of fiduciary duty FRA has been damaged in an amount known to AFAA but unknown to FRA exceeding $660,000.

## Count Three
### (Breach of Duty of Good Faith and Fair Dealing)

26.   FRA incorporates by reference as though set forth in full herein the allegations contained in paragraphs 1 though 25 of this Complaint.

27.   AFAA's breaches of the Agreement and other wrongful conduct set forth above constitute breaches of its duty of good faith and fair dealing to FRA, its joint venturer.

28.   As a result of AFAA's breaches of its duty of good faith and fair dealing FRA has been damaged in an amount known to AFAA but unknown to FRA exceeding $660,000.

## Count Four
### (Conversion and Unjust Enrichment)

29.   FRA incorporates by reference as though set forth in full herein the allegations contained in paragraphs 1 though 28 of this Complaint.

30.   Under the Agreement, all written materials developed for and used during the courses conducted thereunder were the joint property of FRA and AFAA and any

profits derived from their publication and sale, outside the courses, was to be shared equally.

31.     AFAA has marketed and sold materials developed within the parameters of the Agreement and has failed to share the proceeds of such sales with FRA.

32.     AFAA has breached the Agreement by failure to account for all revenues from program operations in which FRA had a right to share.

33.     As a result of AFAA's conversion of the joint venture's assets, FRA has been damaged in an amount known to AFAA but unknown to FRA exceeding $300,000.

## Count Five
## (Accounting)

34.     FRA incorporates by reference as though set forth in full herein the allegations contained in paragraphs 1 though 33 of this Complaint.

35.     As a result of AFAA's breaches of the Agreement and other wrongful conduct FRA has been damaged in an amount known to AFAA but unknown to FRA exceeding $960,000.  Accordingly, FRA is entitled to an accounting by AFAA of the amounts by which FRA has been damaged and which AFAA has wrongfully paid to itself together with an amount representing FRA's equity interest in the joint venture which AFAA continues to operate after forcing out FRA.

WHEREFORE, plaintiff Fitness Resource Associates, Inc. respectfully requests that this court enter judgment in its favor:

A.     Awarding FRA such damages as it may prove at trial that it has suffered on account of AFAA's breaches of the Agreement, breaches of its fiduciary duty to FRA, and breaches of its duty to FRA of good faith and fair dealing;

B.      Requiring AFAA to disgorge such amounts as may be proved at trial that it has converted or by which it has been unjustly enriched;

C.      Ordering AFAA to account to FRA for the amounts it has received on account of the joint venture, including, but not limited to, workshop subscription receipts, publication sales, and issuance of complementary and discounted enrollments;

D.      Awarding such interest, costs, and attorneys fees as are properly recoverable; and

E.      Ordering such other and further relief as the court may deem just and proper.

### Jury Demand

The plaintiff claims a trial by jury on all counts so triable.


Dated: December 15, 2004                    Respectfully submitted,

                                            FITNESS RESOURCE
                                            ASSOCIATES, INC.


                                            Gregg S. Blackburn (BBO# 044430)
                                            CASNER & EDWARDS, LLP
                                            303 Congress Street, 2nd Floor
                                            Boston, MA 02210
                                            (617) 426-5900

Ex. 1A

# A JOINT VENTURE AGREEMENT
## between
## AFAA and FRA

This agreement is entered into this **30**th day of October, 1990, between the Aerobics and Fitness Association of America, a California corporation, with offices located at 15250 Ventura Boulevard, Suite 310, Sherman Oaks, California, 91403, called "AFAA", and Fitness Resource Associates ,Inc, a Massachusetts corporation, with offices located at 19 Brook Road, Suite 103, Needham, Massachusetts, 02194, called "FRA".

### RECITAL

AFAA is an educational and publishing company that specializes in the training and certification of aerobics and fitness instructors, throughout the world, emphasizing techniques in safety presentations and form.

FRA has developed and is teaching and training fitness counselors in various aspects of aerobics and fitness excellence. A copy of their Course Outline is attached and a part hereof.

Comes now the desire of both parties to jointly present fitness courses to the general public, all in accordance with the covenants defined hereunder.

### NOW THEREFORE IT IS AGREED

### I. COURSE OBJECTIVE

As the fitness industry continues to grow in terms of participation and dollars spent, so grows the need for more qualified fitness professionals.

In spite of great advancements in the past decade, our industry continues to cater to the inherently motivated, intrinsic exerciser and ignores the 66-80% of adult Americans who do not exercise regularly. It is clearly time to provide this non-athletically elite population, with information and guidance.

Using health related fitness goals, the course will provide information and skills assisting the participant in working one-on-one with individual clients.

The knowledge base of the program will integrate the most practical methods and procedures for fitness assessment and exercise prescription, with educational theory on how people learn and how the trainer can develop basic counseling skills which will in turn help the client assume new health behaviors.

**page one of six**

## II. THE COURSE

FRA will develop the course and make revisions as deemed appropriate, AFAA having the right to review and approve the course content.

All books and/or training workbooks or manuals developed for and during these courses shall be the joint property of both parties and any profits derived from their publication and sale, outside the courses , will be shared equally. It shall be the responsibility of FRA to timely file necessary copyrights for all materials used in the courses and for obtaining permission from any contributing authors, editors or publishers for the use of any reprinted materials.

AFAA publishes various books and manuals as a general course of doing business. They, therefore, agree that they will not use any of the materials developed for this course in their other publications, unless with the written permission of FRA. However, AFAA does not exclude their right to develop and publish books and manuals that may cover like material: including but not limited to: methods/formats.

The copy of the initial Course Outline, attached hereto is hereby agreed too.

## III. PREREQUISITE

The prerequisite for enrollment in this course for Personal Trainers/ Fitness Counselors is that each participant meets one or more of the following criteria;
1. Be certified by AFAA, IDEA, ACSM or IAR
2. Have a bachelor degree in a health/fitness science program
3. Successfully completed FRA's six hour "Introduction to Exercise Science" course

All sales staff will be aware of this prerequisite and be required to ascertain that all participants meet this requirement before enrollment.

Introduction to Exercise Science will be held prior to any certification training and exam for Personal Trainers/ Fitness Counselors with the mutual agreement of AFAA and FRA. FRA having developed this course maintains the right to final decision on content and materials used with AFAA having review and approval rights. FRA has the exclusive rights to offer and hold Introduction to Exercise Science in Massachusetts, New Hampshire and Rhode Island.

page two of six

## IV. INSTRUCTORS AND EXAM

FRA will, after consultation with AFAA, have the responsibility and final approval of hiring and training the instructors to be used in teaching the courses.

AFAA and FRA will co-develop the exam with final approval of FRA. Scoring and notification of results and issuance of a certification to the participants will be the responsibility of AFAA.

It shall be required by all Course Instructors, before they commence teaching a course, to show proof they have obtained liability insurance to cover their personal training; and, they must sign FRA's Standard Independent Contractor's Agreement.

## V. LOCATIONS

FRA and AFAA will jointly choose city locations for all course workshops and their dates. AFAA will find the host facility for each location using the following guidelines:

1. Hotel preferred
2. Available parking
3. Chairs for participants
4. Quiet lecture area
5. Overhead projector for lectures
6. Space enough for 100 people
7. Easy access

FRA will maintain exclusive rights to offer and run this course in Massachusetts, New Hampshire and Rhode Island. In conjunction with FRA's courses in this restricted area AFAA will hold a challenge exam for certification of Personal Trainers/ Fitness Counselors. All monies collected for the courses held in the restricted area will go to FRA. All monies collected for the challenge exam in the restricted area will go to AFAA. Any changes regarding the exclusivity of Massachusetts, New Hampshire and Rhode Island will be the decision of FRA.

## VI. MARKETING AND SALES

AFAA will provide their marketing and sales department to advertise, promote and register participants in the courses. FRA reserves the right to assist the development and revision of course description, phone scripts, registration procedure and post sales follow-up techniques.

Advertising and promotion of the courses by either party shall be readily identified with the names and/or logos of both AFAA and FRA.

page three of six

## VII. CONTINUING EDUCATION CREDITS

As a part of maintaining certification as an AFAA Certified Instructor, each instructor must continue to enhance their knowledge and skills through programs, workshops, home-study course, etc... After the full development and approval of AFAA, of the course to be offered hereunder, AFAA shall grant to each course participant 12 AFAA Continuing Education Credits.

## VIII. CONTINUING EDUCATION PROGRAM

As part of the ongoing educational process AFAA will institute a continuing education program for all certified Personal Trainers/ Fitness Counselors in order that they may maintain their certification. Paula Besson, M.Ed., from FRA, will be a member of the decision making continuing education provider system.

## IX. INCOME AND EXPENSES

The initial charge to attend the course for Personal Trainers/ Fitness Counselors is two-hundred and ninety-five dollars ($295.00). The charge to attend Introduction to Exercise Science is ninety dollars ($90.00). The price may only be changed or revised by the mutual consent of both parties.
Distribution of these fees shall be :

|      |               |       |
|------|---------------|-------|
| AFAA | Sixty Percent | (60%) |
| FRA  | Forty Percent | (40%) |

Distribution will be within 21 days of each course completion.

AFAA shall be responsible to pay from their portion of the income all expenses to:

a. Advertise
b. Furnish course material
c. Telemarketing costs
d. Telemarketer commissions
e. Credit card clearing
f. Bank charges
g. Registration and administration costs

FRA shall be responsible to pay from their portion of the income all expenses to:

a. Develop and update the course program
b. Pay instructor expenses to include; airfare and hotel
c. Instructor fees
d. Instructor assistants fees as required

page four of six

It is agreed that any course will be subject to cancellation if enrollment does not meet a minimum of fifteen (15) people with the mutual consent of both parties.

## X.   SPONSORSHIP

Both parties shall make every effort to interest a sponsor or sponsors to support the program.  FRA, recognizes that AFAA already works with several sponsors on other programs and conflicts of interest could be created; therefore, FRA will cooperate with AFAA in these endeavors and agrees to AFAA's final approval of any sponsor.

Incomes generated from any sponsor shall be divided as referred to above.

## XI.   TERMINATION

This agreement shall be for a period of one year from the date fully executed and be automatically extended for one year periods so long as both parties agree.
To terminate this agreement, either party shall give the other a ninety day written notice after the first nine month period.

## XII. INSURANCE

Both parties agree to maintain their own liability insurance in the amount of one million dollars.  Each party will name the other party as additionally insured on their existing policy and have a certificate of insurance to that effect mailed to the named insured.

## XIII.   MISCELLANEOUS

This agreement may not be assigned in whole or in part to another person, organization or entity.
This agreement is a California Contract.  It is the intention of the parties that this Agreement, including any suits or special proceedings hereunder (wherever commenced) shall be governed and interpreted by the laws of the State of California.

page five of six

This is the only contractual area in which the parties have agreements and any further agreements, changes or revision must be first submitted and agreed in writing.

The consideration of each party to the development of the programs outlined hereunder shall constitute the consideration to enter into this agreement.

IN WITNESS WHEREOF, the parties hereto cause this agreement to be duly executed and delivered as of the day and year above written.

Aerobics and Fitness Association of America


_____
Linda Pfeiffer, President


Fitness Resource Associates, Inc.


_____
Paula Besson, President


page six of six

Ex. 2

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
                                        )
FITNESS RESOURCE ASSOCIATES, INC.       )
                                        )
              Plaintiff,                )
                                        )
v.                                      )          Civil Action
                                        )          No. 05-10003-RGS
AEROBICS AND FITNESS ASSOCIATION        )
OF AMERICA, INC.                        )
                                        )
              Defendant.                )
                                        )
```

STATE OF CALIFORNIA           )
                              :  ss.
COUNTY OF LOS ANGELES         )

## **AFFIDAVIT OF LINDA PFEFFER**

I, Linda Pfeffer, hereby depose and say that:

1. I am the President of Aerobics and Fitness Association of America, Inc. ("AFAA").

2. AFAA is a separate entity from Fitness Resources Associates, Inc. ("FRA"). We share no ownership, control, or financial resources with FRA.

3. In 1990, AFAA and FRA entered into the written contract to provide workshops for personal trainer fitness instructors. The plaintiff FRA has attached the 1990 contract as an exhibit to its complaint in this lawsuit.

4. Under the 1990 contract, AFAA was responsible for marketing, promoting and finding facilities to host programs, and FRA was responsible for providing course material and staff to teach the programs.

5. AFAA incurred its own costs in selecting and contacting facilities to host the programs; scheduling the programs; advertising, publicizing and promoting programs

through various media; processing enrollments; audio-visual fees; collecting and accounting for enrollment fees and refunds; and preparing, publishing and mailing a study guide, among other costs. FRA did not share any of these costs.

6.    AFAA and FRA did not share the profits or the losses from the programs. Instead, AFAA and FRA each earned a percentage of the gross registration fees paid by fitness instructors who attended the programs. AFAA earned 60%, and FRA earned 40% of the fees collected.

7.    Before, during, and after entering the 1990 contract, AFAA and FRA each performed their own individual fitness programs and fitness-related services without involvement of the other.

8.    Prior to FRA filing of the lawsuit in December 2004, AFAA had on several occasions informed FRA through its counsel that it had violated its contract with AFAA by unilaterally canceling training programs. In response, FRA informed AFAA that it had committed certain wrongful acts, which AFAA denied. In July 2004, AFAA terminated its contract with FRA.

9.    For a period of over twelve years, FRA and AFAA worked together under the 1990 contract without any objection or complaint by FRA, and FRA began to complain only in the thirteenth year of the contract.

10.    For more than one year leading up to FRA's filing of this lawsuit, I reviewed many letters exchanged between our counsel and FRA counsel that included proposals for resolving our claims without litigation. As President of AFAA, I believed that FRA was interested in resolving the actions without litigation.

11.    AFAA and FRA are now in active competition with one another.

12.    I have reviewed FRA's complaint. AFAA anticipates responding to the complaint and asserting its own claims against FRA. Most of the documentary evidence and the witnesses with knowledge of the parties' claims are located in California. As to documents, I estimate that there are tens of thousands of documents relating to fitness workshops alone, along with documents relating to the contractual relationship, the publications, and any financial issues that may be relevant, all of which are located in California. Additionally, the following individuals with knowledge of these issues are all located in California:

- Linda Pfeffer, AFAA President – Knowledge concerning 1990 agreement and working relationship between AFAA and FRA.

- Phillip Longsworth, AFAA Vice President of Finance – Knowledge concerning financial relationship between AFAA and FRA.

- Carol Mejia, AFAA Employee, Programming Dept. – Knowledge concerning host site locations, presenters and programs.

- Felix Rojas, AFAA Supervisor, Customer Service and Sales – Knowledge concerning customer complaints.

- Jennifer Ell, AFAA Employee, Host Site Department – Knowledge concerning scheduling host site locations.

- Claudia Gaer, AFAA employee, Host Site Department – Knowledge concerning scheduling host site locations.

- Megan Stern, AFAA Supervisor, Professional Affiliate Department – Knowledge concerning scheduling host site locations.

- Lisa Shapiro, AFAA Vice President, Business Development – Knowledge concerning 1990 agreement and working relationship.

- Haruka Satoh, AFAA Employee, Accounting Department – Knowledge concerning workshops accounts.

- Rocky Fawcett, AFAA Vice President, Publishing – Knowledge concerning 1990 agreement, working relationship, and publishing/advertising of workshops.

- Chris Cuthrell, former AFAA Vice President – Knowledge concerning operations, host site locations.

- Sue Pieroni, former AFAA Employee, Customer Service and Programming Department  - Knowledge concerning host site locations, customer service issues, complaints relating to workshops.

- Laura Carrington, AFAA Employee, Publishing Department – Knowledge concerning publishing/advertising of workshops, calendar of workshops, study guide.

- Tony Eid, AFAA Vice President of Accounting – Knowledge concerning financial relationship between AFAA and FRA.

- Lauri Reimer, AFAA Supervisor, Programming Department – Knowledge concerning host site locations, presenters, and operation of workshops.

- Kurt Murray, AFAA Supervisor, Continuing Education and Provider Department – Knowledge concerning working relationship, program content, cancellations of workshops, and presenters.

- Tracy Guirnela, AFAA Employee, Host Site Department – Knowledge concerning scheduling of host site locations.

- Jacob Gray, AFAA Employee, Customer Service – Knowledge concerning customer complaints.

- Dennis Zabate, AFAA Employee, Computer Department – Knowledge concerning posting of host site locations.

- April Flores, AFAA Employee, TeleFitness Department – Knowledge concerning off-calendar workshops and host site locations.

- Lita Slaughter, AFAA Employee, Accounting Department – Knowledge concerning book sales.

Signed Under Penalties of Perjury this _10th_ day of January, 2005.



Linda Pfeffer

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of January, 2005.

Tony Eid    NOTARY PUBLIC

TONY EID
Commission # 1367039
Notary Public - California
Los Angeles County
My Comm. Expires Jul 28, 2006

5

Ex. 3

LAW OFFICES OF
## JONATHAN KIRSCH
A PROFESSIONAL CORPORATION
1875 CENTURY PARK EAST
SUITE 1700
LOS ANGELES, CALIFORNIA 90067

TELEPHONE (310) 785-1200
FAX (310) 286-9573

E-MAIL: jk@jonathankirsch.com

## NOTICE OF TERMINATION

*By Federal Express and Fax to (617) 426-8810*

July 16, 2004

David J. Chavolla
Casner & Edwards, LLP
303 Congress Street
Boston, Massachusetts 02210

Re:     **Aerobics and Fitness Association of America**
        *Fitness Resource Associates, Inc.*

Dear Mr. Chavolla,

On behalf of my client, Aerobics and Fitness Association of America (AFAA), notice is hereby given to your client, Fitness Resource Associates, Inc. (FRA), as follows.

Pursuant to Section XI of the document titled "A Joint Venture Agreement between AFAA and FRA," dated October 30, 1990, AFAA is hereby giving notice of termination of the so-called "Joint Venture Agreement," and all other agreements and arrangements between the two companies, effective ninety (90) days after the date of this notice.

As previously proposed on repeated occasions, AFAA invites FRA to meet, with or without the assistance of counsel, in order to discuss an orderly phase-out of their co-marketing arrangements. In any event, however, AFAA will no longer operate pursuant to the current agreements and arrangements after the termination date.

Also, as previously noted on repeated occasions, AFAA does *not* concede that the so-called "Joint Venture Agreement" actually created a joint venture between the parties.

Finally, all rights and remedies are hereby expressly reserved on behalf of AFAA.

Thank for your attention to this matter.

Sincerely yours,

Jonathan Kirsch

JK:jw
cc: Aerobics and Fitness Association of America