UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FITNESS RESOURCE ASSOCIATES, INC.  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>AEROBICS AND FITNESS ASSOCIATION  )<br>OF AMERICA, INC.  )<br>  )<br>Defendant.  )<br>  ) | Civil Action<br>No. 05-10003-RGS |

**ANSWER AND COUNTERCLAIM OF DEFENDANT, AEROBICS AND FITNESS
ASSOCIATION OF AMERICA, INC.**

The defendant, Aerobics and Fitness Association of America, Inc. ("AFAA") states as follows in response to each paragraph of the complaint:

1. AFAA admits that Fitness Resource Associates Inc. ("FRA") filed a complaint against AFAA seeking damages. AFAA denies the remaining allegations contained in paragraph one.

2. AFAA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph two, and therefore neither admits nor denies said allegations, but calls upon plaintiff to prove the same.

3. AFAA admits that it is a California corporation with a principal place of business in California, but denies the remaining allegations in the first sentence of paragraph three. AFAA denies the characterization of its business in the second sentence of paragraph three. AFAA has

been in the business of training and certifying fitness professionals, and has published fitness books and related material for approximately twenty years, independently from FRA.

4.  The allegations in paragraph four contain legal conclusions to which no response is required. To the extent that a response is required, AFAA denies the allegations.

5.  AFAA denies the allegation contained in paragraph five that FRA and AFAA had formed a joint venture. AFAA admits the allegation contained in paragraph five that before the 1990 contract, FRA existed as its own entity separate from AFAA but unlike AFAA did not perform certification of fitness professionals on a national basis. As to the remaining allegations contained in paragraph five, AFAA is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore neither admits nor denies said allegations, but calls upon plaintiff to prove the same.

6.  AFAA denies the allegation contained in paragraph six that FRA and AFAA had formed a joint venture. AFAA admits that prior to entering into the 1990 contract with FRA, AFAA was already in the business of certifying aerobics instructors. In addition to certifying aerobics instructors, AFAA had also been in the business of certifying various other fitness professionals prior to the 1990 contract, and AFAA had developed a worldwide reputation as a leading fitness certification entity in a number of fitness disciplines. In 1990, AFAA agreed that FRA would provide FRA's personal trainer course and instruction at some of AFAA's fitness certification workshops.

7.  AFAA denies the allegation contained in paragraph seven that FRA and AFAA had formed a joint venture. AFAA admits that it entered into a written contract with FRA, a copy of

which is attached to plaintiff's complaint as Exhibit A, wherein FRA was to conduct instruction at some of AFAA's fitness certification workshops.

8. Denied.

9. AFAA denies the allegation contained in paragraph nine that FRA and AFAA had formed a joint venture. AFAA admits the allegations contained in the third sentence of paragraph nine. AFAA admits that AFAA advertised workshops, communicated with instructors, collected enrollment fees and certified individuals who passed exams. Because the remaining allegations appear to refer to an undefined period of time, AFAA is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore neither admits nor denies said allegations, but calls upon plaintiff to prove the same.

10. Denied.

11. Denied.

12. Denied.

13. AFAA denies the allegations contained in the first sentence of paragraph thirteen. The allegations in the second sentence reference terms of a written contract, which speaks for itself. AFAA denies the allegations contained in the third and fourth sentences of paragraph thirteen.

14. The allegations in the first sentence of paragraph fourteen reference terms of a written contract, which speaks for itself. As to the second sentence, AFAA admits that it paid for the printing of the study guide. AFAA denies the remaining allegations contained in paragraph fourteen.

15. Denied.

16. Denied.

17.  Denied.

18.  Denied.

19.  In response to the allegations contained in paragraph nineteen of the Complaint, AFAA repeats each of its responses to paragraphs one through eighteen as though fully set forth herein.

20.  Denied.

21.  Denied.

22.  Denied.

23.  In response to the allegations contained in paragraph twenty-three of the Complaint, AFAA repeats each of its responses to paragraphs one through twenty-two as though fully set forth herein.

24.  Denied.

25.  Denied.

26.  In response to the allegations contained in paragraph twenty-six of the Complaint, AFAA repeats each of its responses to paragraphs one through twenty-five as though fully set forth herein.

27.  Denied.

28.  Denied.

29.  In response to the allegations contained in paragraph twenty-nine of the Complaint, AFAA repeats each of its responses to paragraphs one through twenty-eight as though fully set forth herein.

30.  AFAA admits that the 1990 contract provides that "[a]ll books and/or training workbooks or manuals developed for and during these courses shall be the joint property of both parties and

any profits derived from their publication and sale, outside the courses, will be shared equally."
AFAA denies the remaining allegations contained in paragraph thirty.

31. Denied.

32. Denied.

33. Denied.

34. In response to the allegations contained in paragraph thirty-four of the Complaint, AFAA repeats each of its responses to paragraphs one through thirty-three as though fully set forth herein.

35. Denied.

## SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

The complaint fails to state a claim against the defendant upon which relief can be granted and must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### SECOND SEPARATE DEFENSE

The plaintiff's claims are barred by estoppel.

### THIRD SEPARATE DEFENSE

The plaintiffs' contractual claims are barred by lack of consideration.

### FOURTH SEPARATE DEFENSE

The plaintiff's claims are barred by the statute of frauds.

### FIFTH SEPARATE DEFENSE

The plaintiff's claims are barred by the statute of limitations.

### SIXTH SEPARATE DEFENSE

L:\13345\000\Pld\08

The plaintiff's claims are barred by waiver.

## SEVENTH SEPARATE DEFENSE

The plaintiff's claims are barred by laches.

## EIGHTH SEPARATE DEFENSE

The plaintiff's claims are barred by plaintiff's ratification.

## NINTH SEPARATE DEFENSE

The plaintiff's lawsuit should be transferred from the Unites States District Court in Massachusetts to the United States District Court in California (Central Division).

## TENTH SEPARATE DEFENSE

The plaintiff's contract claims are barred by its own prior material breach.

## ELEVENTH SEPARATE DEFENSE

The plaintiff's claim for breach of fiduciary duty should be dismissed, as there was no fiduciary duty owed by AFAA to FRA. To the extent that the relationship between AFAA and FRA created any such duties, FRA and not AFAA was the breaching party.

## COUNTERCLAIM

The Plaintiff-In-Counterclaim, Aerobics and Fitness Association of America, Inc. ("AFAA"), hereby asserts the following counterclaims against Fitness Resource Associates, Inc. ("FRA").

## PARTIES

1. Counterclaim Plaintiff AFAA is a corporation duly organized and existing under the laws of the State of California.

2. Counterclaim Defendant FRA is a corporation organized and existing under the laws of

L:\13345\000\Pld\08

the Commonwealth of Massachusetts.

## FACTS

3. For the past twenty-two years, AFAA has been in the business of training and certifying fitness professionals in a number of fitness disciplines, and of publishing various fitness-related books and manuals. During this time, AFAA has established successful business relationships and good will with many fitness trainers, instructors and health clubs throughout the United States and in foreign countries.

4. In or prior to 1990, FRA was aware of the business relationships and good will that existed between AFAA and its customers and other contacts, and that AFAA enjoyed business, revenues, profits and other benefits from those relationships as described above.

5. On or about October 30, 1990, AFAA and FRA entered into a written contract (hereinafter "the contract"). The contract initially contemplated the presentation of personal trainer/fitness counselor workshops. Later, the parties agreed to present yoga workshops in a similar manner. The contract was drafted by the parties, and not by counsel. A copy of the contract is attached hereto as Exhibit A.

6. Pursuant to the terms of the contract, AFAA was responsible for marketing, promoting and finding facilities in mutually agreed-upon locations to host workshops, and FRA was responsible for providing the course and staff to teach the workshops. Under the contract, AFAA and FRA developed examinations to be given at the workshops. AFAA determined the scores on those examinations, and AFAA certified those who received acceptable scores.

7. Under the contract, AFAA earned 60% and FRA earned 40% of the registration fees paid by workshop attendees. AFAA and FRA did not share the profits or the losses from these workshops.

8.  AFAA incurred its own expenses in carrying out its contractual duties under the contract, which included: selecting and contacting facilities to host the programs; booking and paying for facilities to host programs; scheduling the programs; advertising, publicizing and promoting programs through various media; processing enrollments; providing audio-visual equipment at workshops; collecting and accounting for enrollment fees and refunds; paying bank charges; and printing and mailing a study guide, among other costs. FRA did not share any of these costs.

9.  The 1990 contract did not require exclusive dealings between AFAA and FRA, nor did it restrict AFAA's right to continue providing its fitness certifications and related fitness activities. Before, during and after the contract, AFAA was free to conduct and did conduct many workshops and fitness-related activities separate from FRA related to teaching, training, testing and certifying fitness professionals in a variety of fitness disciplines, both nationally and internationally.

10. The contract recognized that "AFAA publishes various books and manuals as a general course of doing business." Under the contract, training workbooks or manuals developed "for and during these courses" were to become joint property and profits shared equally by AFAA and FRA. However, the contract "[did] not exclude [AFAA's] right to develop and publish books and manuals that may cover like material . . ." Contract, par. II.

11. Under the contract, the date and location of workshops to be conducted were to be jointly chosen by AFAA and FRA. Workshops with less than 15 enrollments were subject to cancellation but only with the mutual consent of AFAA and FRA.

12. From approximately 1990 to 2003, AFAA and FRA conducted workshops throughout the United States. Due to the overall financial success and national market presence of the

L:\13345\000\Pld\08

workshops, FRA voluntarily continued to perform without meaningful objection under the contract, including conducting workshops where enrollment was less than fifteen people.

13.    By no later than 2003, the fitness certification industry had become very competitive. FRA demanded the cancellation of workshops that FRA did not deem profitable to FRA, without regard to the substantial expenses incurred by AFAA in scheduling, promoting and otherwise arranging for the workshops, overall profitability of the workshops nationally, or the need to maintain market share in the face of greater competition. FRA did not demand the cancellation of workshops that were profitable to FRA.

14.    When AFAA did not consent to cancellation of each workshop that FRA demanded be cancelled, FRA unilaterally cancelled workshops by refusing to perform its obligations under the contract. As a result of FRA's cancellations of workshops, AFAA sustained substantial damages in the form of expenditures incurred, *inter alia*, in scheduling the workshops, promoting and marketing the workshops, and processing enrollment fees and refunds. AFAA also incurred damages in lost enrollment fees, and damage to its reputation and good will.

15.    Under the contract, FRA agreed that AFAA would "hold a challenge exam for certification of Personal Trainers/Fitness Counselors" in conjunction with FRA's exclusive courses conducted in Massachusetts, New Hampshire, and Rhode Island, and agreed that AFAA was entitled to all money collected from those exams. Contract, par. V. The parties understood and agreed that FRA would hold such exams on AFAA's behalf. However, upon information and belief, FRA did not hold such exams on AFAA's behalf in conjunction with every FRA course conducted in Massachusetts, New Hampshire and Rhode Island, in violation of the contract, resulting in damages to AFAA.

L:\13345\000\Pld\08

9

16.   During the term of the contract, FRA obtained access to AFAA's customer list, which is a proprietary business asset belonging to AFAA, under agreement to use the information solely for workshops conducted jointly by AFAA and FRA. FRA used AFAA's customer list without authorization for its own use and as part of FRA's workshops, and with one or more of AFAA's competitors, including but not limited to the American College of Sports Medicine (ACSM). Additionally, an employee of AFAA who provided services as a workshop presenter for FRA, intentionally and with FRA's knowledge diverted business opportunities to FRA for its own use.

17.   In or about 2002, AFAA and FRA agreed as part of the contract to conduct workshops related to yoga certification, which was a three-tiered program. FRA agreed to and provided AFAA assurances that it would provide staff for the three-tiered yoga workshops beginning in November 2002. In or about August 2003, at FRA's request, AFAA agreed to an orderly phrase-out of the yoga workshops conditioned on FRA's agreement to staff all yoga workshops that had already been scheduled, including yoga workshops scheduled to take place at AFAA's annual "APEX" fitness program in multiple cities throughout the United States in February 2004. AFAA reasonably relied to its detriment upon FRA's agreement and assurances to provide staff for the yoga certification workshops, including those scheduled for "APEX" in February 2004, by scheduling, advertising, promoting and accepting enrollments in workshops. FRA refused to staff some of the yoga workshops, in violation of the agreement and assurances to AFAA, resulting in damage to AFAA. Starting in approximately June 2004, while the contract was still in effect, FRA commenced its own yoga certification workshops without AFAA, using the AFAA customer list without AFAA's consent, and FRA claimed that the workshops were adopted by AFAA even though AFAA was excluded from the programs.

L:\13345\000\Pld\08

10

18.     On or about July 16, 2004, AFAA lawfully gave notice of termination of its contract with FRA, effective 90 days after the date of the notice, which contract had previously been breached by FRA.

19.     During the term of the 1990 contract, FRA without AFAA's knowledge entered into written non-compete agreements with certain fitness instructors with whom AFAA had existing relationships as a separate entity. In 2004, when FRA was demanding substantial payments from AFAA to resolve their competing disputes, FRA threatened to enforce those non-compete agreements against AFAA and the fitness instructors so that AFAA could not conduct its own workshops using these presenters. FRA has since acknowledged in papers filed in the present action that at least some of these agreements may be not be enforceable under California law and that it is FRA's intention not to defend the enforceability of the non-compete agreements in California.

20.     Starting in or about 2004, during the term of the 1990 contract, pursuant to a plan initiated and orchestrated by the International Healthclub and Racquet Sports Association (IHRSA), FRA applied to the National Commission on Certifying Agencies (NCCA) for accreditation as an issuer of fitness certifications in direct competition with AFAA. Pursuant to the IHRSA plan, only certifications issued by certifying organizations that had been accredited by NCCA are to be recognized by health clubs that belong to IHRSA. By acting in concert with IHRSA and the NCCA, FRA was seeking to compete with AFAA and to exclude AFAA from engaging in business in the fitness industry.

## COUNT I
## BREACH OF CONTRACT

21.     AFAA repeats each of its allegations contained in paragraphs one through twenty as though fully set forth herein.

22.     As set forth above, FRA entered into a written contract with AFAA in 1990, and AFAA has fully performed its obligations under the contract.

23.     As set forth above, FRA breached the contract by, among other things, unilaterally refusing to provide staff and services or various scheduled workshops, thus compelling AFAA to cancel such workshops, and not holding challenge exams on behalf of AFAA in conjunction with each FRA workshops held in the states of Massachusetts, New Hampshire and Rhode Island.

24.     As a result of FRA's breaches of contract, AFAA suffered damages, for which FRA is liable to AFAA.

## COUNT II
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

25.     AFAA repeats each of its allegations contained in paragraphs one through twenty-four as though fully set forth herein.

26.     As set forth above, FRA entered into a written contract with AFAA in 1990, which contained therein an implied covenant on the part of the parties of good faith and fair dealing.

27.     FRA breached the implied covenant of good faith and fair dealing owed to AFAA by, among other things, unilaterally canceling workshops, failing to perform its obligations in providing staff and services at those workshops, not holding challenge exams on behalf of AFAA in conjunction

L:\13345\000\Pld\08

with every FRA workshop held in the states of Massachusetts, New Hampshire and Rhode Island, using AFAA's customer list and other proprietary information for its own use and in competition with AFAA, and knowingly diverting business opportunities of AFAA for its own use.

28. As a result of FRA's breaches of the implied covenant of good faith and fair dealing, AFAA has suffered damages for which FRA is liable to AFAA.

## COUNT III
## PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

29. AFAA repeats each of its allegations contained in paragraphs one through twenty-eight as though fully set forth herein.

30. As set forth above, FRA made a clear promise and intended through its representations to induce AFAA into conducting fitness workshops.

31. AFAA reasonably relied and acted upon to their detriment FRA's representations, by expending funds to schedule, promote and otherwise arrange for such workshops.

32. As a consequence of FRA's representations and its failure or refusal to provide staff and services at the workshops, AFAA suffered damages for which FRA is liable to AFAA.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

33. AFAA repeats each of its allegations contained in paragraphs one through thirty-two as though fully set forth herein.

34. AFAA was the rightful owner of certain confidential business information, including its customer list described above, and the resulting business and good will of its customers.

L:\13345\000\Pld\08

35. FRA used AFAA's confidential business information under circumstances in which they had a duty to refrain from doing so.

36. FRA disclosed or used AFAA's confidential business information, as aforesaid, without AFAA's consent and for FRA's own benefit.

37. As a proximate result of FRA's conduct as described herein, AFAA has suffered damages for which FRA is liable to AFAA.

**COUNT V**
**INTENTIONAL INTERFERENCE WITH**
**BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE**

38. AFAA repeats each of its allegations contained in paragraphs one through thirty-seven as though fully set forth herein.

39. Over the course of twenty-two years, AFAA had established successful business relationships and good will with many fitness trainers, instructors, health clubs and other contacts throughout the United States, and in foreign countries, from which relationships AFAA enjoyed and expected to enjoy business, revenues, profits and other benefits.

40. FRA knew about the business relationships and good will that existed between AFAA and its customers and other contacts, and that AFAA enjoyed and expected to enjoy business, revenues, profits and other benefits from those relationships as described above.

41. FRA intentionally interfered with AFAA's relationships with customers and other contacts by, among other things, improperly using AFAA's customer list and diverting business away from AFAA to or for the benefit of FRA and other fitness certification entities which

compete with AFAA, and by acting in concert with others to exclude AFAA from business in the fitness industry.

42. The conduct of FRA was calculated to enable FRA to obtain and enjoy AFAA's business and customer good will for its own benefit and the benefit of other fitness certification entities which are competitors of AFAA with whom FRA has entered into business relations, including but not limited to ACSM.

43. FRA's conduct, as aforesaid, was done with the unlawful purpose of causing damage to and interfering with existing and prospective business relationships and good will that existed between AFAA and its customers and other contacts, without right or justification.

44. As a result of the conduct of FRA as aforesaid, AFAA's relationship with its customers and other contacts has been harmed, and AFAA has suffered and continues to suffer actual damage and loss of business for which FRA is liable to AFAA.

## COUNT VI
## CONVERSION

45. AFAA repeats each of its allegations contained in paragraphs one through forty-four as though fully set forth herein.

46. FRA converted to its own use the confidential business information of AFAA, including its customer lists and good will.

47. As a proximate result of FRA's conduct as described herein, AFAA has suffered damages for which FRA is liable to AFAA.

## COUNT VII
## UNFAIR COMPETITION

48. AFAA repeats each of its allegations contained in paragraphs one through forty-seven as though fully set forth herein.

49. As set forth above, FRA violated the California Business and Professional Code, § 17200 by, among other things, using AFAA's customer list for its own benefit, diverting opportunities away from AFAA, threatening to enforce unlawful non-compete agreements against AFAA and those with whom AFAA had existing business relationships, and by acting in concert with others to exclude AFAA from business in the fitness industry.

50. As a result of FRA's actions, AFAA has incurred damages for which FRA is liable to AFAA.

WHEREFORE, Plaintiff-In-Counterclaim, AFAA, respectfully requests that judgment enter:

1. Dismissing FRA's Complaint with prejudice against AFAA;

2. Awarding damages to AFAA on its counterclaim in an amount to be determined at trial, together with interest, costs and attorneys' fees;

3. For such further relief as this Court deems proper and just.

16

**JURY DEMAND**

The Defendant/Plaintiff-In-Counterclaim demands a trial by jury on all claims so triable.

                                      AEROBICS AND FITNESS ASSOCIATION OF AMERICA, INC.

By its attorneys,

February 17, 2005                /s/ Edward V. Colbert III
                                      Richard J. Grahn (BBO #206620)
                                      Edward V. Colbert III (BBO #566187)
                                      LOONEY & GROSSMAN LLP
                                      101 Arch Street
                                      Boston, MA 02110
                                      (617) 951-2800

L:\13345\000\Pld\08

## VERIFICATION

I, Linda Pfeffer, under penalties of perjury, state that I am the President of Aerobics and Fitness Association of America, Inc., that I have reviewed the foregoing counterclaim, and have personal knowledge of the matters set forth therein except those based on information and belief, which matters I believe to be true.

_Linda Pfeffer_
Linda Pfeffer

## CERTIFICATE OF SERVICE

I hereby certify that I have this 17th day of February 2005 served a copy of the foregoing pleading upon all parties hereto by mailing copies thereof, via first class mail, postage prepaid, properly addressed to:

Gregg S. Blackburn, Esq.
Casner & Edwards LLP
303 Congress Street
Boston, MA 02210

/s/
Edward V. Colbert III

L:\13345\000\Pld\08